UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| FALCON PRODUCTS, INC., a ) | |
| Delaware corporation, et al., ) | |
| ) | |
| Debtors. ) | |
| _____ ) | |
| ) | |
| FALCON CREDITOR TRUST, ) | No. 4:07-CV-1495 CAS |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | |
| ) | |
| RIGHTCHOICE MANAGED CARE, ) | |
| d/b/a BLUE CROSS BLUE SHIELD, ) | |
| ) | |
| Appellee. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on an appeal by the Falcon Creditor Trust (the "Trust") of a Judgment and Order Granting Summary Judgment in favor of Defendant RightChoice Managed Care, Inc., d/b/a Blue Cross and Blue Shield ("Blue Cross") issued by the United States Bankruptcy Court for the Eastern District of Missouri on July 20, 2007 (the "Bankruptcy Court Order"). The Trust elected to have the appeal heard by the district court rather than the Bankruptcy Appellate Panel.

This case concerns the Bankruptcy Court's denial of a complaint to avoid preferential transfers. The main issue presented in this appeal is whether the Bankruptcy Court erred in granting summary judgment in favor of appellee Blue Cross, by erroneously finding that (1) Blue Cross would have a priority unsecured claim if the Trust recovered the transfers at issue, based on the Bankruptcy Court's legal conclusion that a creditor that turns over preferential transfers receives a priority

unsecured claim under 11 U.S.C. § 502(h) if that creditor would have had a priority unsecured claim had the transfers at issue not occurred, and (2) the Trust's recovery of the transfers at issue are barred based on the legal conclusion that 11 U.S.C. § 550(a) prevents the avoidance and recovery of transfers if such avoidance and recovery would result in a § 502(h) claim equal in value to the transfers. For the following reasons, the Court will affirm the Bankruptcy Court's Order.

**I. Jurisdiction and Standard of Review**.

District courts have jurisdiction to review appeals from bankruptcy court final orders and judgments pursuant to 28 U.S.C. § 158(a)(1). See In re Gaines, 932 F.2d 729, 731 (8th Cir. 1991). The Court therefore has jurisdiction over this matter.

This Court reviews the bankruptcy court's legal conclusions de novo and its findings of fact for clear error. See In re Reynolds, 425 F.3d 526, 531 (8th Cir. 2005), cert. denied sub nom Educational Credit Mgmt. Corp. v. Reynolds, 127 S. Ct. 46 (2006); In re LeMaire, 898 F.2d 1346, 1349 (8th Cir. 1990) (en banc).

**II. Background**.

Falcon Products, Inc. and eight affiliated companies (collectively the "Debtors") voluntarily filed for protection under Chapter 11 of the bankruptcy laws in January 2005. The nine cases were consolidated for procedural purposes and were administered jointly in the Bankruptcy Court as Case No. 05-41108-399.[1]

On October 18, 2005, the Bankruptcy Court confirmed the Debtors' Third Amended Joint Plan of Reorganization (the "Plan"). Pursuant to the Plan, certain rights and causes of action previously held by the Debtors vested in the Trust, including the authority to prosecute Chapter 5

---

[1]The Debtors emerged from bankruptcy on November 15, 2005.

causes of action including preference claims. On January 12, 2007, the Trust filed its Complaint in the Bankruptcy Court, seeking to avoid and recover five preferential transfers totaling $239,916.18 (the "Transfers") made to Blue Cross within the ninety days preceding the case, pursuant to 11 U.S.C. §§ 547 and 550.

On May 30, 2007, Blue Cross filed a motion for summary judgment on the Complaint to avoid and recover the five preferential transfers, which the Trust opposed. On July 20, 2007, the Bankruptcy Court granted summary judgment in Blue Cross's favor, holding that (1) if the Transfers had not been made, Blue Cross would have had a priority unsecured claim in the amount of the Transfers which would be entitled to payment in full under the Plan, (2) if Blue Cross had returned the Transfers it would have received a priority unsecured employee benefit claim under § 502(h) which would be entitled to payment in full under the Plan, and (3) as a result of (1) and (2), payment by Blue Cross to the Trust as a representative of the Debtors' estate appointed under the Plan would require a return payment in the same amount to Blue Cross to satisfy its priority claim. Bankruptcy Court Order at 21.

The Bankruptcy Court concluded that because Blue Cross would be entitled to receive exactly what it would be forced to return through avoidance, avoidance would be pointless. The Bankruptcy Court also concluded that by granting Blue Cross's motion for summary judgment, Blue Cross was being treated consistently with all other holders of employee benefit claims, which were paid in full either pursuant to the Employee Benefits Order or the Plan, and that Blue Cross should not be penalized vis-a-vis other providers of employee benefits merely because payments to it were current on the Petition Date. Id. at 22.

**III. Findings of Fact**.

The Bankruptcy Court made findings of fact in the Bankruptcy Court Order which the Trust does not challenge on appeal as erroneous. The Court therefore adopts the Bankruptcy Court's factual findings, with minor modifications:

1. On January 31, 2005 ("Petition Date"), Falcon Products, Inc.; Epic Furniture Group, Inc.; The Falcon Companies International, Inc.; Falcon Holdings, Inc.; Howe Furniture Corporation; Johnson Industries, Inc.; Madison Furniture Industries, Inc.; Sellers & Josephson, Inc.; and Shelby Williams Industries, Inc. (collectively "Debtors") filed petitions for relief under Chapter 11 of the Bankruptcy Code, Title 11 of the United States Code. The Bankruptcy Court authorized the joint administration and procedural consolidation of the Debtors' Chapter 11 cases under the Falcon Products, Inc. case caption and number.

2. On October 18, 2005, the Bankruptcy Court confirmed the Debtors' Third Amended Joint Plan of Reorganization ("Plan") pursuant to which the Debtors' cases were substantively consolidated.

3. Pursuant to the Plan, the Trust was formed for the benefit of the holders of the Debtors' general unsecured claims. (Plan at 84, 94-96). On the Plan's effective date, certain rights and causes of action previously held by the Debtors–including the authority to prosecute avoidance actions under Chapter 5 of the Bankruptcy Code–were "deemed to be assigned to" the Trust. (Plan at 96).

4. The Trust initiated this adversary proceeding by filing its Complaint to Avoid and Recover Preferential Transfer. In the Complaint, the Trust seeks to avoid as preferential under Section 547 of the Bankruptcy Code five prepetition transfers to Blue Cross in the aggregate amount of $239,916.18 ("Transfers") and to recover such an amount from Blue Cross pursuant to Section 550

of the Bankruptcy Code. The Trust also seeks the disallowance of any claim Blue Cross has asserted against the Debtors' consolidated bankruptcy estate pursuant to Section 502(d) of the Bankruptcy Code.

Bases of the Transfers

5. The Debtors employed approximately 1,640 employees at various locations. The Debtors offered three separate medical plans to which its employees were assigned. Thirty employees participated in an HMO plan in California. Thirty-three employees participated in an HMO plan in Saint Louis. Approximately 1,310 employees participated in a self-funded PPO plan ("PPO Plan").

6. Beginning July 1, 2004, Blue Cross was the third party administrator for the Debtors' PPO Plan.

7. The Debtors' employees who participated in the PPO Plan utilized the Blue Cross Blue Card network as the plan's in-network health care provider.

8. Blue Cross provided claims administration for the PPO Plan. The Debtors' employees who participated in the PPO Plan were able to seek health care from the network of health care providers in the Blue Cross network. After visiting a network provider, the employee or the health care provider submitted medical bills to Blue Cross for reimbursement. Blue Cross reviewed and administered the claims in compliance with its agreement with the Debtors. Blue Cross advised the Debtors on a weekly basis of the claim charges for that week and administered the payment of such claims. The Debtors paid administrative fees to Blue Cross to cover Blue Cross' costs and expenses in administering the PPO.

9. The Debtors paid Blue Cross a monthly access fee calculated on a per member per month basis in order to gain access to Blue Cross' network of health care providers and to realize a portion of the discounts that participating providers extended to Blue Cross.

10. Blue Cross also provided "stop-loss" insurance coverage to the Debtors whereby Blue Cross covered all applicable health care costs in excess of $175,000 per employee.

11. The Transfers at issue in this adversary proceeding consisted of payments for administrative fees, access fees, and stop loss premium payments owed by the Debtors to Blue Cross for services rendered in October, November, and December of 2004.

Post-Petition Events

Debtors' First Day Motions

12. On the Petition Date, the Debtors filed a series of "First Day Motions." Included in the First Day Motions was the Debtors' Emergency Motion for an Order (1) Authorizing the Debtors to Pay Prepetition Wages, Salaries, and Employee Benefits; (2) Authorizing the Debtors to Continue the Maintenance of Employee Benefit Programs in the Ordinary Course; and (3) Directing All Banks to Honor Prepetition Checks for Payment of Prepetition Employee Obligations Pursuant to 11 U.S.C. §§ 105(a), 507(a)(3), and 507(a)(4) (the "Employee Benefits Motion"). In the Employee Benefits Motion, the Debtors sought authority to pay various pre-petition claims for employee compensation and to continue various employee benefit plans and programs including the Debtors' PPO Plan administered by Blue Cross. (Employee Benefits Motion at 8, ¶ 19, and at 18-19, ¶¶ 52-54).

13. In the Employee Benefits Motion, the Debtors made the following representations to the Bankruptcy Court:

A. As of the Petition Date the Debtors' approximately 1,640 employees included full-time, part-time, and temporary employees. (Employee Benefits Motion at 9, ¶ 23).

B. The Debtors' employees were categorized into two groups: 440 Sales, General and Administrative Employees and 1,200 Factory Employees. (Id.)

C. The unpaid wages and salaries of the Debtors' employees as of the Petition Date represented an average per Factory Employee of $510.00 and an average per Sales, General and Administrative Employee of $2,100.00. (Employee Benefits Motion at 12, ¶ 31).

D. The Debtors believed that the overwhelming majority of their Employees were each owed significantly less than $4,925.00 in prepetition wages and salaries. (Id.)

E. The Debtors believed that their pre-petition wages and salary claims combined with contributions to employee benefit programs would not exceed the dollar limits for priority claims provided under Bankruptcy Code Sections 507(a)(3) and 507(a)(4) of $4,925.00 per employee in the case of the overwhelming majority of employees. The Debtors further stated that "[such priority claims must, in any event, be paid in full under any plan of reorganization." (Employee Benefits Motion at 24, ¶ 74).

F. The Debtors again stated that "it is believed that the overwhelming majority of the Debtors' Employees are owed amounts that are under the $4,925.00 cap contained in Sections 507(a)(3) and 507(a)(4)." (Employee Benefits Motion at 24, n.8).

14. The Debtors filed the Affidavit of Neal R. Restivo in support of Chapter 11 Petitions and Emergency First Day Motions ("Restivo Affidavit") to provide a factual basis for the Employee Benefits Motion.

15. The Bankruptcy Court granted the Employee Benefits Motion by order dated February 3, 2005 ("Employee Benefits Order").

<u>Debtors' Disclosure Statement and Plan</u>

16. As stated above, the Debtors' Plan was confirmed on October 18, 2005. The Debtors accomplished the solicitation of votes in favor of the Plan by circulation of the Disclosure Statement to Accompany Debtors' Second Amended Joint Chapter 11 Plan of Reorganization Dated August 29, 2005 ("Disclosure Statement").[2]

17. In the Disclosure Statement, the Debtors estimated Unsecured Priority Claims in the aggregate amount of $947,198.23. (Disclosure Statement at 48, ¶ 1). The Debtors identified Priority Tax Claims of approximately $243,000. (Disclosure Statement at 78). The Debtors grouped non-tax priority claims into Class 5 Other Priority Claims which included claims with priority pursuant to Bankruptcy Code Sections 507(a)(3), 507(a)(4), 507(a)(5), and 507(a)(6). (Disclosure Statement at 82). The Debtors represented that they believed "that their actual obligation for Other Priority Claims are [sic] not substantial." (Disclosure Statement at 83). Class 5 Other Priority Claims were unimpaired under the Plan and were to be paid in full. (Disclosure Statement at 82).

---

[2]The Debtors' Second Amended Plan was circulated to creditors for voting purposes. At the hearing on confirmation of such plan, the Debtors announced certain changes to the plan which were incorporated into the Debtors' Third Amended Joint Plan of Reorganization which became the confirmed Plan.

**IV. Issues on Appeal.**

The Falcon Creditor Trust appeals the Bankruptcy Court's decision, arguing the Bankruptcy Court erred in holding as follows:

(1) Blue Cross would have a priority unsecured claim if the Trust recovered the preferential transfers at issue, based on the legal conclusion that a creditor that turns over preferential transfers receives a priority unsecured claim under 11 U.S.C. § 502(h) if that creditor would have had a priority unsecured claim had the transfers not occurred; and

(2) the Trust's recovery of the transfers at issue is barred, based on the legal conclusion that 11 U.S.C. § 550(a) prevents the avoidance and recovery of transfers if such avoidance and recovery would result in a § 502(h) claim equal in value to the transfers.

In response, the Falcon Group asserts that the Bankruptcy Court's decision should be affirmed, because it correctly recognized that Blue Cross is entitled to a priority claim under section 502(h) and that surrendering the payments the Trust is demanding would result in no benefit to the Debtors' bankruptcy estate.

**V. Discussion.**

In this appeal, the Trust challenges the Bankruptcy Court's legal conclusion that Blue Cross would be entitled to a priority claim in the Debtors' bankruptcy case by operation of section 502(h) of the Bankruptcy Code, thus rendering pointless the Trust's demand for recovery of certain payments made by the Debtors to Blue Cross. The Trust does not challenge the Bankruptcy Court's conclusion that under section 507(a)(4) of the Bankruptcy Code, which grants providers of employee health benefits a priority claim in a bankruptcy case, Blue Cross would qualify as a priority claimant. Nor does the Trust dispute that the Debtors' Plan of Reorganization and the Bankruptcy Code

require payment of priority claims in full. Rather, the Trust's contention is that, notwithstanding section 507(a)(4) of the Bankruptcy Code, when a priority claimant such as Blue Cross is forced to surrender payments it properly received prior to a bankruptcy case, the claimant should be stripped of its priority status and be reduced to a general unsecured claimant, to be paid on a pro-rata basis if at all.

The Bankruptcy Court rejected the Trust's argument, finding instead that section 502(h) preserves the status, priority or otherwise, a claimant may have had prior to bankruptcy filing. Consequently, if a priority claimant such as Blue Cross were forced to give up valid payments it received prior to the bankruptcy case, it would necessarily be entitled to its original priority status by virtue of section 502(h). The Bankruptcy Court held that because the Bankruptcy Code and the Debtor's Plan of Reorganization mandate that all priority claims be paid in full, requiring the surrender of the payments at issue would be pointless and would not benefit the Debtors or their creditors. As a result, the Bankruptcy Court denied the attempted avoidance action by the Trust.

### A. **The Bankruptcy Court Correctly Concluded that Under Section 502(h), the Status of a Creditor's Claim is Preserved Throughout the Bankruptcy Case**.

In a bankruptcy case, a debtor (or as here, a debtor's representative) can seek to avoid certain prepetition transactions by the debtor pursuant to various sections of the Bankruptcy Code, including 11 U.S.C. § 547, dealing with preferential transfers. If the debtor is successful in proving the availability of a particular transfer, section 550 of the Bankruptcy Code allows the debtor to recover the transfer if the recovery is "for the benefit of the estate." 11 U.S.C. § 550. Following avoidance and recovery of the transfer, the Bankruptcy Code protects the transferee through section 502(h) by returning the transferee to the status it would have had if it had never received the now-avoided transfer. This ensures that all similar creditors, whether paid via an avoided preference payment or

10

never paid in the first place, are treated equally, which is a paramount goal of the Bankruptcy Code. See Begier v. I.R.S., 496 U.S. 53, 58 (1990) ("Equality of distribution among creditors is a central policy of the Bankruptcy Code.").

The Trust contends that because Blue Cross has not returned the Transfers, it does not have a claim under section 502(h), and that if it did return the Transfers, it would only have a non-priority general unsecured claim because § 502(h) of the Bankruptcy Code converts all claims of creditors under that section to mere general unsecured claims, thereby stripping such creditors of any priority or secured status to which they previously were entitled. The Trust contends that if Congress had intended for § 502(h) to create an unsecured priority claim, the language of § 502(h) would explicitly so state. The Trust argues that (1) the plain language of § 502(h) creates a general unsecured claim; (2) an examination of the statutory treatment of transfers avoided under § 549 of the Bankruptcy Code supports its interpretation of § 502(h); (3) the internal consistency of § 502 requires a decision in the Trust's favor; and (4) the legislative history of § 502(h) supports its position.

As a matter of statutory construction, the rule is that Congress "says in a statute what it means and means in a statute what it says there." Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992). When a bankruptcy "statute's language is plain, the sole function of the courts is to enforce it according to its terms." United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989).

Section 502(h) provides in pertinent part as follows: "A claim arising from the recovery of property under section . . . 550 . . . of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section . . . the same as if such claim had arisen before the date of the filing of the petition." By enacting this provision, Congress sought to protect the claims of creditors who are forced to give up payments as "preferences." See, e.g., In re Dunes Hotel Assoc.,

1997 WL 33344253, at **12-13 (Bankr. D.S.C. Sept. 26, 1997) ("Congress intended that such creditors should have a claim against the estate by reason of the avoidance.") (citing Collier on Bankruptcy, ¶ 502.LH[10] at 502-113-15 (1997)). To assure that claims arising from preferences are treated the same as if the preference payments had never been made, Congress mandated in section 502(h) that a claim be "determined" and "allowed" in the same manner "as if such claim had arisen before the date of the filing of the petition." In other words, a preference claimant is to be treated the same as all other similarly situated claimants who did not receive payments prior to bankruptcy.

The Trust's argument posits that a preference claimant who was undisputably entitled to priority prior to bankruptcy should be stripped to mere general unsecured status if it has to surrender its payments during the bankruptcy case. Nothing in the language of section 502(h) leads to this result. The plain language of the statute places the preference claimant in the same position it would have been in prior to bankruptcy had it never been paid, thus treating all claimants equally, and not in the unequal manner urged by the Trust. As Blue Cross observes, the Trust's theory would allow and encourage debtors to pay priority creditors just before filing bankruptcy, only to turn around and sue them after bankruptcy to recover these payments, thereby reducing the former priority creditors to general unsecured status.

An argument similar to the Trust's was rejected by the First Circuit Court of Appeals in In re Bankvest Capital Corp., 375 F.3d 51 (1st Cir. 2004). The First Circuit held that under the plain language of the statute, a claim arising under § 502(h) "takes on the characteristics of the original claim," which in Bankvest was secured status. Id. at 67. The First Circuit stated it could "see no reason, nor any indication of legislative intent in § 502(h), to strip a secured creditor of its secured

claim in these circumstances. Indeed, to do so would seem manifestly unfair." Id. This is because the avoided payment would presumably be distributed among other creditors, "thus providing a windfall to the estate and depriving [the secured creditor] of the amount to which it was entitled." Id. The First Circuit found general support for its position in "such case law as there is" and among scholarly articles. Id. at 67-68. The First Circuit therefore concluded that if the payments to the secured creditor in Bankvest were avoided, the creditor would become entitled to a secured claim pursuant to § 502(h). This is because "the trustee's recovery of the transfer restores the original claim, with the transferee's status becoming that of the holder of a prepetition claim existing at the time of the filing of the debtor's petition." Id. at 69. The Court agrees with the First Circuit's analysis, and can see no reason why under § 502(h) a priority claim should be stripped down to general unsecured status, and notes that similar unfairness would result if it were.

As in the instant case, the creditor in Bankvest had not returned the disputed payments, but the First Circuit concluded the creditor was not required to return the payments in order to preserve its secured status. The First Circuit stated that "[n]othing would be achieved by recovering payment to a secured creditor who in any event is entitled to the payment ahead of other creditors." Id. at 71 (quoted case omitted). Requiring return of the payments would be a useless act, because a § 502(h) creditor "would be entitled to receive exactly what it would be forced to return through avoidance," thus rendering "avoidance pointless." Id.

The primary case relied on by the Trust, In re Allied Companies, Inc., 155 B.R. 739 (Bankr. S.D. Ind. 1992) ("Allied"), is distinguishable.³ Allied concerns application of the "new value"

---

³The Trust cited the Allied decision only in its Reply brief, thus depriving Blue Cross of the opportunity to address its argument. The Trust did not rely on Allied in opposing Blue Cross's motion for summary judgment in the Bankruptcy Court.

13

exception to preference recovery of 11 U.S.C. § 547, which is not at issue in the instant case. The new value exception applies to debtors and creditors who have multiple transactions during the preference period, as is typical when the debtor has an open or running account with a supplier. Id. at 741. The prime equitable basis for the new value exception "is that new value extended by the creditor in essence returns the earlier preferential payment to the debtor (up to the value of the new value)." Id. at 744. Significantly, the new value exception applies only where, inter alia, a creditor advances new value to the debtor on an unsecured basis after receiving a transfer from the debtor. 155 B.R. at 743 (citing In re New York City Shoes, Inc., 880 F.2d 679, 680 (3d Cir. 1989)).

The issue in Allied was whether the creditor was entitled to credit against preference liability for all shipments it made to the debtor after the first payment it received from the debtor during the preference period, or only for those shipments that remained unpaid at the time of the debtor's bankruptcy filing. 155 B.R. at 742-43. The bankruptcy court's analysis turned on the "remains unpaid" language derived from § 547(c)(4)(B), which the court determined should not be "literally and uncritically applied when the payment for the new value was later avoided as a preference." 155 B.R. at 743. The court held that the creditor was entitled to credit for all shipments made after the first payment, because it would be unfair to deny the creditor credit for shipments on which payment had been made in the preference period to the extent the debtor sought to recover the payments as preferential. Id. at 744. The court stated, "The Debtor's formula would give the estate an inequitable double benefit-no credit given for the creditor's advance of new value and recovery of the payment for this new value." Id.

As part of the bankruptcy court's analysis of the "remains unpaid" requirement, it noted the rule that under the Bankruptcy Code's claim allowance provision, a claim arising from the avoidance

14

of a preferential transfer is treated as if the claim had arisen before the filing of the bankruptcy petition. The court stated that if avoidance of the preference relates back to the time before bankruptcy for the purpose of claim allowance, to the detriment of the creditor, then it is fair and logical that it also relate back for the purpose of determining whether a claim for new value remained unpaid at the time of bankruptcy. 155 B.R. at 744. The language quoted by the Trust in support of its argument ("This means that the creditor may assert only a general unsecured prepetition claim against the estate, rather than arguing for a higher priority post-petition administrative claim.") is inapposite here. The quoted statement was made in the context of analyzing unsecured new value claims, and does not purport to interpret § 502(h) in the applicable context of a priority claim which must be paid under the Plan at issue.

Based on the foregoing, the Court concludes the Trust's argument, that a priority claim is reduced to a general unsecured claim under § 502(h), is contrary to the plain language of the statute. As a result, the Court does not find it appropriate to consider other sections of the Bankruptcy Code or the legislative history.

### B. The Bankruptcy Court Properly Concluded that Requiring Blue Cross to Return the Transfers Would Not Benefit Any Party and Therefore Properly Declined to Order Avoidance.

The second issue on appeal is the Trust's argument that the Bankruptcy Court erred in refusing to order avoidance of the Transfers, based on its incorrect legal conclusion that 11 U.S.C. § 550(a) prevents the avoidance and recovery of transfers if such avoidance and recovery would result in a § 502(h) claim equal in value to the transfers. The Trust contends the Bankruptcy Court erroneously held that Blue Cross could set off its § 502(h) claim, which has not yet arisen because Blue Cross did not return the Transfers, against its preference liability. The Trust asserts the

Bankruptcy Court erred because § 502(h) claims arise only after avoidable transfers are returned, and § 502(h) requires disallowance of any claim of a creditor that has not returned preferential transfers it received. The Trust also asserts that even if the § 502(h) claim existed, it could not be set off against Blue Cross's preference liability, because mutuality of both debts and parties is lacking.

The Trust's argument misses the mark, as it does not address the basis of the Bankruptcy Court's action. The Bankruptcy Court did not rely on principles of setoff, bur rather cited Section 550 of the Bankruptcy Code, which requires the party seeking to avoid a payment (here, the Trust) to prove as a prerequisite to any recovery that the recovery be "for the benefit of the estate." 11 U.S.C. § 550(a). In direct accord with this section, the Bankruptcy Court concluded that "successful prosecution of this adversary proceeding cannot produce any benefit to the Debtors' estate nor to the Trust as the assignee of any net recovery from avoidance actions." Bankruptcy Court Order at 23, ¶ 34. As discussed above, this is because Blue Cross was a priority unsecured creditor, and had to paid in full under the Plan.

The Court notes that the Bankruptcy Court's opinion does not use the word "setoff". It does use the word "offset" once, in the hypothetical context of the Debtors pursuing the claims against Blue Choice directly, rather than through the Trust as their representative. The Bankruptcy Court noted that in such a case "Blue Cross would be able to offset the Resulting Claim against the preference liability" and stated that the "Trust should not be in a better position vis-a-vis Blue Cross than the Debtors." Bankruptcy Court Order at 23, ¶ 34. The Bankruptcy Court did not rely on setoff principles in reaching its decision, but rather used this language to illustrate the principle that the Trust, as the Debtors' assignee, could not obtain greater rights than the assignor had at the time of the assignment, citing Kroeplin Farms General Partnership v. Heartland Crop Insurance, Inc., 430

F.3d 906, 911 (8th Cir. 2005). The Bankruptcy Court concluded, "To accept the Trust's position that it should be allowed to avoid and recover the Transfers from Blue Cross yet the Blue Cross Resulting Claim should neither be recognized nor factored into the equation would violate this princip[le]." Id.

The Bankruptcy Court properly recognized the futility of going through the exercise of avoiding the Transfers and then paying them back to Blue Cross, as a "waste of judicial resources" which would "impose unnecessary litigation costs on both Blue Cross and the Debtors' unsecured creditors who are the beneficiaries of the Trust[.]" Bankruptcy Court Order at 23. The Supreme Court has recognized the uselessness of making a preference defendant return a preference payment to a bankruptcy estate, when the bankruptcy estate will then be required to pay some or all of the amount back to the defendant. See Page v. Rogers, 211 U.S. 575, 581 (1909) ("it is entirely practicable to avoid the circuitous proceeding of compelling the defendant to pay into the bankruptcy court the full amount of the preference which he has received, and then to resort to the same court to obtain part of it back by way of dividend."). The Bankruptcy Court was correct in avoiding the waste that would result from forcing the parties to engage in the pointless exercise urged by the Trust. Cf. Bankvest, 375 F.3d at 71 ("Nothing would be achieved by recovering payment to a secured creditor who in any event is entitled to the payment ahead of other creditors."). The Bankruptcy Court's decision upheld the intent of Congress in enacting section 502(h) to insure fair treatment of all similarly situated creditors.

Because the Court concludes that the Bankruptcy Court did not rest its decision on principles of setoff, it does not address the Trust's additional arguments that mutuality of debts and parties are lacking.

17

**VI. Conclusion**.

The Court concludes that the Bankruptcy Court was correct in finding that Blue Cross, as a provider of employee benefit services, would be entitled to a priority claim in the bankruptcy case which must be paid in full. The Bankruptcy Court further was correct in recognizing that as a holder of a priority claim, which is preserved under section 502(h) and which must be paid in full, no purpose would be served by requiring Blue Cross to return the Transfers and then recover them from the estate. For these reasons, the Court concludes that the Bankruptcy Court Order should be affirmed. Appellant Falcon Creditor Trust's request for oral argument is denied.

Accordingly,

**IT IS HEREBY ORDERED** that the Order Granting Summary Judgment in Favor of Defendant RightChoice Managed Care, Inc., d/b/a Blue Cross and Blue Shield issued by the United States Bankruptcy Court for the Eastern District of Missouri on July 20, 2007 is **AFFIRMED**.

An appropriate order will accompany this memorandum and order.

 

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this __8th__ day of February, 2008.